PEOPLE v. VINOKUROW.

1. BRIBERY—PUBLIC OFFICER—EVIDENCE.
   If liquor licensee and his wife left a case of beer, some wine and liquor at home of chief of police who had recently filed a complaint with liquor control commission against the licensee, for the purpose of influencing the police chief's act, opinion or judgment, such act would be sufficient to sustain charge of bribery of a public official, even though he was not at home when the liquor was left and was not later contacted (Act No. 328, § 117, Pub. Acts 1931).

2. SAME—EVIDENCE—INTENT.
   It is not necessary that there be direct testimony as to the intent required in statute relative to bribery of a public officer (Act No. 328, § 117, Pub. Acts 1931).

3. SAME—CONSTRUCTION OF STATUTES.
   The law relating to bribery of public officers should not be so construed as to make defendants in such cases conviction proof, in view of the nature of the crime (Act No. 328, § 117, Pub. Acts 1931).

4. CRIMINAL LAW—INTENT—EVIDENCE.
   A jury may determine the intention of accused persons from the acts and circumstances shown, as well as by the direct testimony upon the point.

5. BRIBERY—PUBLIC OFFICER—EVIDENCE—LIQUOR LICENSEE—INTENT.
   In prosecution for bribery of chief of police by defendant liquor licensee and his wife, where it appears that latter had left a

REFERENCES FOR POINTS IN HEADNOTES

[1] 8 Am. Jur., Bribery, § 7.
[1] Admissibility and weight of evidence of defendant's attempt to secure release by bribing officer. 93 A.L.R. 810.
[1, 2, 5, 9] 8 Am. Jur., Bribery, § 33.
[4] 20 Am. Jur., Evidence, § 273.
[5, 6] 8 Am. Jur., Bribery, § 8.
[7] 53 Am. Jur., Trial, §§ 527, 529.
[8] 53 Am. Jur., Trial, § 539.

case of beer, some wine and liquor at former's home after the former had filed a complaint against latter with the liquor control commission and would soon be the chief witness against the licensee at a hearing scheduled for a few days hence and the families had not only not been friendly before but had not even had a speaking acquaintance, evidence was sufficient to establish intent (Act No. 328, § 117, Pub. Acts 1931).

6. SAME—GIFT—INTENT.

In prosecution for bribery of a public official it is a question for the jury to determine the defendants' motives in the making of a gift to the official for if a corrupt or criminal intent is present, that which might otherwise be regarded as an innocent act of friendship must be held to be criminal (Act No. 328, § 117, Pub. Acts 1931).

7. CRIMINAL LAW—REQUESTS TO CHARGE—INSTRUCTIONS.

In prosecution for crime it is not necessary for the trial court to give the exact charges as requested by defendant so long as those matters included in defendants' proper requests to charge are covered in the charge as given.

8. BRIBERY—INSTRUCTIONS—REQUESTS TO CHARGE.

Charge as given in prosecution of liquor licensee and his wife for bribery of chief of police *held*, to have covered such matters as were included in defendants' proper requests to charge (Act No. 328, § 117, Pub. Acts 1931).

9. SAME—VERDICT—EVIDENCE.

In prosecution for bribery of chief of police by liquor licensee, evidence *held*, ample to support jury's verdict of conviction, where it included testimony of the chief of police, his wife and other witnesses for the people (Act No. 328, § 117, Pub. Acts 1931).

Appeal from Oakland; Holland (H. Russel), J. Submitted June 17, 1948. (Docket No. 68, Calendar No. 43,792.) Decided September 8, 1948.

Helen and Vidos Vinokurow were convicted of bribery. Affirmed.

*Davidow & Davidow,* for appellants.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Clyde D. Underwood,* Prosecuting Attorney, and *Lewis R. Bebout,* Special Assistant Prosecuting Attorney, for the people.

BUSHNELL, C. J. Defendants Helen Vinokurow and Vidos Vinokurow, husband and wife, appeal from a conviction of the crime of bribery. The statute defining this specific crime (Act No. 328, § 117, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 17115–117, Stat. Ann. § 28.312]), is as follows:

"Any person who shall corruptly give, offer or promise to any public officer, agent, servant or employee, after the election or appointment of such public officer, agent, servant or employee and either before or after such public officer, agent, servant or employee shall have been qualified or shall take his seat, any gift, gratuity, money, property or other valuable thing, the intent or purpose of which is to influence the act, vote, opinion, decision or judgment of such public officer, agent, servant or employee, or his action on any matter, question, cause or proceeding, which may be pending or may by law be brought before him in public capacity, or the purpose and intent of which is to influence any act or omission relating to any public duty of such officer, agent, servant or employee, shall be guilty of a felony."

The most important contention made upon appeal is that the people failed to prove intent and, therefore, defendants were entitled to a directed verdict.

Defendants own and operate a beer garden in the city of Hazel Park, known as Oak Garden. Shortly prior to the evening when the alleged offense took place, Robert E. Taylor, who was at the time the chief of police of the city of Hazel Park, filed a complaint against defendants with the State liquor control commission. The hearing had been set for

October 14, 1943. On the evening of October 11, 1943, while Taylor was away from home at a boy scout meeting, Vinokurow and his wife visited the Taylor home. During their stay of about 45 minutes, according to the testimony of Mrs. Taylor, Mrs. Vinokurow several times inquired as to the whereabouts of Taylor and as to whether it would be at all possible to get in touch with him so that he could return home in time to talk with the defendants. Mrs. Taylor advised her that it was impossible to get in touch with her husband.

After lengthy conversations, mostly about personal and family matters, Mrs. Vinokurow inquired as to how much rent was being paid by the Taylors, and she was informed that it was $60 per month. Mrs. Taylor testified that Vinokurow then crossed the room and offered her a roll of currency, which she refused to accept. Thereupon, according to her testimony, Vinokurow went out to his car and brought in a case of beer and some wine and whiskey, and told her that they had brought it to be used by the Taylors for a house warming party. Mrs. Taylor told the defendants that she and her husband never drank liquor and asked them to take it away. Apparently Mrs. Taylor then got quite excited, but when the defendants left without seeing Taylor, they did not take the liquor and beer.

Mrs. Vinokurow testified on behalf of her husband and herself to the effect that the reason they went to the Taylor residence was because the Taylors had recently moved into the neighborhood and they wanted to be friendly towards them; that they were informed that Mrs. Taylor was going to have a birthday party for the baby at which adults would be present and at which the Vinokurows thought the Taylors would appreciate having some liquor. She denied that she continually inquired as to whether Taylor could be reached and prevailed upon to re-

turn home; and she also denied that her husband had offered a roll of bills to Mrs. Taylor. She also maintained that Mrs. Taylor had not insisted that the defendants take the liquor away with them but, instead, although resisting at first, finally accepted the gift. She further maintained, of course, that there was no evil purpose in the visit and that the gift was made because of a friendly motive and was in no way connected with the pending complaint before the liquor control commission.

Both at the close of the people's case and at the close of the defense, a motion was made for a directed verdict of not guilty, which was denied. The jury returned a verdict of guilty, and subsequently a motion for a new trial was made and this was also denied. Defendants were each placed on probation for one year and ordered to pay $150 costs within 30 days and $1 per month probation costs.

Defendants maintain that not only did the people fail to prove any of the elements of the crime, a contention which may be dismissed without further discussion, but that they particularly failed to prove the existence of the necessary intent required by the statute. The statute sets out the required intent in this manner: "The intent or purpose of which is to influence the act, vote, opinion, decision or judgment of such public officer." It is immaterial that Taylor was not at home on this occasion. It is also immaterial that he was not later contacted. If the jury believed that the liquor was left at his home for the purpose of influencing his "act, * * * opinion * * * or judgment," that would be sufficient. But it is argued that there is no testimony to the effect that the liquor was left at the Taylor home for such a purpose. It is not necessary that there be direct testimony as to the intent required in the statute. If such were the case it would be almost a rarity when a conviction could be obtained under this kind of

statute. For it is not the ordinary instance when one, about to set out to accomplish the crime charged in such a case as this, will advertise and make known their intent. As is often the case, here the only people who actually had knowledge of what the defendants' intent was were the defendants themselves. The law should not be so construed as to make defendants in such cases conviction proof.

It is a well-established rule that the jury may determine the intention of accused persons from the acts and circumstances shown, as well as by the direct testimony upon the point. So, when a man takes a loaded gun, points it at another, and pulls the trigger, it is reasonable for the jury to infer that he had the intention of inflicting injury; so here it is also reasonable for the jury to infer that these defendants had the required intent, when the facts show that Mr. Taylor was to be the chief witness against defendants at the hearing scheduled for a few days later; that the defendants and the Taylors had never been friendly before, nor had they had even a speaking acquaintance.

It is stated in 2 Gillespie on Michigan Criminal Law & Procedure, § 933 (b):

"In all cases of bribery, where intent is an issue, it is a question for the jury to determine the defendant's motives in the making of a gift to a public official. If a corrupt or criminal intent is present, that which might otherwise be regarded as an innocent act of friendship must be held to be criminal."

See, also, *People* v. *Carrier,* 46 Mich. 442; *People* v. *Salsbury,* 134 Mich. 537; and *People* v. *McGarry,* 136 Mich. 316.

Defendants maintain that the case of *People* v. *Bilitzke,* 174 Mich. 329, is controlling upon this phase of the case. That case, however, is distinguishable. There, the testimony showed that the

payment of the money was made not to the prosecuting attorney to influence his action but, rather, under the mistaken belief that it was a payment that was required to reimburse the officer for the expense and difficulty which he had been caused. It was there said at page 333:

"If the position of the prosecutor was that he had been to trouble and expense in getting ready for trial, he would have had a right to demand as a condition to giving his consent that the county be reimbursed for what it had expended. The offer of money by respondent under these circumstances would have been for the purpose of influencing the action of the prosecuting attorney, and yet it would not have been a corrupt offer."

Defendants' next claim of error is that the trial judge refused and failed to give requested charges 1 to 8, inclusive, which, in substance, outlined the defendants' theory of the case. The law is clear that it was not necessary for the trial judge to give the exact charges as requested by these defendants and that no error was committed so long as the court's charge, in substance, covers those matters which were included in defendants' proper requests to charge. *People* v. *Gorsline,* 132 Mich. 549; *People* v. *Salsbury, supra; People* v. *Mullis,* 200 Mich. 505; and *People* v. *DeMeaux,* 194 Mich. 18.

In the instant case the trial judge properly fulfilled this duty and covered the theory of the defendants' case with the following charge, which we find without error:

"I further charge you in connection with the element of intent that: Guilty knowledge or a corrupt intent is an essential element of bribery under our statutes. It is necessary for the people not only to charge, but to prove a corrupt intent upon the part of the defendant in offering money or gifts as a bribe to a public officer. In other words, it must be

.shown that the respondents here gave or offered to the then chief of police a reward, gift, or favor with the intent, purpose or design to pervert his judgment or to corrupt his action. It appears to be the settled case law that it would not be bribery for a person to ingratiate himself with a public official through flattery, favors or gifts, provided there is no intent, design or purpose to corruptly influence his official acts. In all cases of bribery where intent is an issue, it is a question for the jury to determine the defendant's motives in the making of a gift to a public official. If a corrupt or criminal intent is present, that which might otherwise be regarded as an innocent act of friendship, must be held to be criminal.

"In connection with the matter of intent, I further charge you that the question of intent is one that is hard to establish by direct proof, because grown persons do not always disclose the object they have in view, in connection with any acts in which they may indulge, and you have to gather intent from the character of the act, from the spoken words, if any, the circumstances surrounding the acts complained of and from the conduct of like character which may appear as tending to aid you in finding and discovering it. Intent, except when confessed, is a matter of inference. Intent, unless confessed, can only be proved by acts and other things already mentioned, as jurors cannot look into, or read the minds of the accused. Jurors have a right to draw logical inferences as to the intent with which a particular act was done, just as they draw all other inferences from any facts given in evidence, which to their minds fairly prove its existence.

"In connection with the matter of intent, I further charge you as follows: The mere fact that Mr. Taylor, then chief of police, was not at home when the alleged gift or gifts were delivered, or allegedly offered, is immaterial, if, under the instructions given you, you find that the gift, gifts or offer of the same were intended for the then chief of police, and

the things of value were delivered at the Taylor home with the intent, design or purpose to corrupt and influence the chief of police of said city, in the discharge of his official duties.

"On the other hand, if you find that gifts or offer of gifts were directed only at Mrs. Taylor and that Mr. Taylor, the then chief of police, did not figure in the offer of the gifts in any manner or respect, and that the offer of gifts were in no wise intended or designed to corrupt or influence Mr. Taylor in the discharge of his official duties, then you will find the respondents not guilty.

"I charge you that if the conduct of defendants is reconcilable with the claim of innocence, that you should give the defendants the benefit of that, and find them not guilty.

"I further charge you, ladies and gentlemen of the jury, that the prosecution, to sustain its case, must prove a corrupt intent on the part of the defendants in allegedly offering the gift; that if the defendants offered the gift merely to establish friendly relations with Mrs. Taylor, then no such corrupt intent will have been established and it will be your duty to find the defendants not guilty. In that connection I think that I have instructed you sufficiently by this time for you to understand and know that intent is the crux or the essence of this entire matter."

Defendants further contend that the verdict is contrary to the evidence. From an examination of the record as a whole, and from the testimony adduced by Mrs. Taylor, her husband, and the other witnesses for the people, we find ample evidence to support the verdict of the jury.

For the above reasons the verdict and sentence are affirmed.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.